BEFORE THE UNITED STATES JUDICIAL
PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| In re: Behr DeckOver Marketing and Sales Practices Litigation | MDL No. _____ |

MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR TRANSFER AND CONSOLIDATION

Pursuant to 28 U.S.C. § 1407 and the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Plaintiffs Linne Rose and Joan Edwards (collectively, "Plaintiffs") respectfully submit this Memorandum of Law in Support of their Motion for Transfer and Consolidation the nine (9) actions[1] to the Central District of California.

INTRODUCTION

Each of the complaints filed in the actions at issue involves a common defect regarding the durability of Behr's DeckOver product ("DeckOver"), which is advertised, marketed, and sold by Defendants Behr Process Corporation, Behr Paint Corporation, Masco Corporation (together "Behr"), The Home Depot, Inc., and Home Depot U.S.A., Inc. (together "Home Depot") (collectively "Defendants"). DeckOver is a coating product known as a "resurfacer," which is marketed by Defendants for application to decks, patios, porches, pool decks, and other surfaces. Plaintiffs in these related cases allege that Defendants falsely described DeckOver as having key characteristics including a life expectancy ranging up to twenty-five years, that it "resists cracking & peeling," that it contains a "durable, mildew resistant finish," and that it

---

[1] A total of six class actions were filed in the Central District of California. As of September 13, 2017, all six class actions pending in the Central District of California were consolidated before the Hon. Andrew Guilford. *See* Ex. 4. Without consolidation, there would have been a total of fourteen (14) class actions. The attached Scheduled of Actions lists the current status of all known actions regarding DeckOver.

"revives wood & composite decks, railings, porches, & boat docks." However, DeckOver has a common defect that leads to, among other things, premature cracking, peeling, and bubbling.

The transfer and consolidation of these actions is appropriate and will serve the purposes of judicial economy by providing national coordination of discovery and preventing duplicative and potentially conflicting pretrial rulings. Transfer and consolidation will also reduce the costs of litigation and allow cases to proceed more efficiently to trial. Accordingly, Plaintiffs pray that this Honorable Panel transfer and consolidate the cases referenced in the Schedule of Actions to the United States District Court for the Central District of California before the Honorable Andrew Guilford for coordinated and/or consolidated pre-trial proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

This motion arises from cases brought by forty (40) plaintiffs comprising eighteen (18) states pending in nine (9) jurisdictions. *See* Schedule of Actions. All are styled as putative class actions. Each of these actions contains nearly identical factual allegations and legal claims against Defendants.[2]

Behr designed and developed a resurfacer sold under the name "DeckOver." A resurfacer is an alternative coating to paints and strainers that, generally speaking, provide a thick protective barrier that fills in cracks and encapsulates splinters. Resurfacers are intended to be applied to a range of surfaces, including decks, patios, porches, and pool decks. In addition to its protective qualities, resurfacers are also intended to have a pleasing aesthetic quality. In view of its multiple benefits, resurfacers command a premium in the market over paints and stains.

---

[2] There is one other federal case aside from those at issue in this motion that is related to DeckOver's common defect. Because this action is distinct in that it is an individual, not a class, action, and is only against Behr, not Home Depot, Plaintiffs do not seek their inclusion in this proposed multidistrict litigation. This case is *Cortinas v. Behr Process Corp.*, 4:16-cv-1718 (E.D. Mo.). *See* Ex. 10.

Behr sells DeckOver exclusively through Home Depot. Behr first introduced DeckOver in 2012 to a limited release of Home Depo stores and expanded to all Home Depot stores, retail and online, in 2013. In its marketing, both Behr and Home Depot claim that DeckOver offers a range of material benefits, including that it creates a "[l]ong lasting, durable finish," it "conceals cracks and splinters up to 1/4 [of an inch]," creates a "smooth, slip-resistant finish that also resists cracking and peeling" and that it is "5x thicker than standard paints and stains." On its website, Behr boasts that the 'life expectancy" of DeckOver ranges from five years to twenty five years, depending on whether it is applied to horizontal or vertical surfaces. For its part, Home Depot advertises DeckOver by saying it "will bring your old, weathered wood or concrete back to life," that it will "create[] a durable coating on your tired deck, rejuvenating its look," that it "[r]esists cracking and peeling," "conceals splinters and cracks up to ¼ in," is "waterproof[]" and provides a "mildew resistant finish."

Contrary to Defendants' marketing, DeckOver is defective in that it routinely peels, bubbles, strips, and degrades within months of application. Defendants were aware of the pervasive issues surrounding DeckOver through their own internal testing as well as through consumer complaints. Consumers who applied DeckOver are forced to either spend hours removing the remaining patches of DeckOver or, if such efforts are unsuccessful, dismantle and replace the entire surface.

The actions were all filed between June and December, 2017. Out of fourteen actions, six (6) were filed in the Central District of California (*see* Ex. 4), one (1) in the Eastern District of California (*see* Ex. 5), one (1) in the Eastern District of New York (*see* Ex. 6), one (1) in the Northern District of Illinois (*see* Ex. 7), one (1) in the Western District of North Carolina (*see* Ex. 1), one (1) in the Middle District of Florida (*see* Ex. 3), one (1) in the District of Oregon (*see*

Ex. 8), and one (1) in the District of New Jersey (*see* Ex. 9). Each of the cases have followed different procedural paths. The six actions filed in the Central District of California were consolidated on motion from the plaintiffs and without opposition from Behr or Home Depot. *See* Ex. 4. In the action pending in the Northern District of Illinois, Behr and Home Depot answered the plaintiffs' complaint and the parties have filed a Rule 26(f) report. *See* Ex. 7. In the action pending in the Eastern District of New York, Behr filed an answer and Home Depot anticipates filing a partial motion to dismiss. *See* Ex. 6. Behr answered the complaint in the Eastern District of California while Home Depot moved to dismiss. *See* Ex. 5. Defendants have not answered or otherwise responded to the plaintiffs' complaints in all other actions. *See* Ex. 1-3, 8-10.

## ARGUMENT

### I. Transfer of the Actions for Consolidation and Coordination is Appropriate Under 28 U.S.C. § 1407

The Panel should transfer and consolidate these cases in a single district because: (1) the actions involve numerous common questions of fact and law; and (2) consolidation will be for the convenience of the parties and witnesses, and (3) consolidation will promote the just and efficient conduct of this litigation. See 28 U.S.C. §1407.

Authority for the JPML to transfer actions sharing common questions of fact to a single district for coordinated or consolidated pretrial proceedings is set forth in 28 U.S.C. §1407. Specifically, §1407(a) provides:

> When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions.

4

Transfer and consolidation is authorized where the JPML determines that such transfer will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of such actions. *Id.*

The purpose of the multidistrict litigation process is to "eliminate the potential for contemporaneous pretrial rulings by coordinating district and appellate courts in multidistrict related civil actions." *See In re Multidistrict Private Civ. Treble Damages Litig.*, 298 F. Supp. 484, 491-92 (J.P.M.L. 1968). Transfer of related actions to a single district for pretrial proceedings avoids conflicting pretrial discovery and ensures uniform and expeditious treatment in the pretrial procedures. *See In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1230 (9th Cir. 2006). Moreover, the JPML "considers that eliminating duplicate discovery in similar cases, avoiding conflicting judicial rulings, and conserving valuable judicial resources are sound reasons for centralizing pretrial proceedings." Hon. John G. Heyburn II, *A View from the Panel: Part of the Solution*, 82 Tul. L. Rev. 2225, 2236 (2008).

The JPML has long recognized that overlapping and parallel class actions asserting similar claims for recovery are particularly well-suited for consolidation. *In re Hawaiian Hotel Room Rate Antitrust Litig.*, 438 F. Supp. 935, 936 (J.P.M.L. 1977) ("Section 1407 centralization is especially important to ensure consistent treatment of the class actions issues."). Indeed, in several similar class actions regarding defective construction materials against manufacturers, this Panel has granted consolidation. For instance, in *In Re: MI Windows And Doors, Inc., Products Liability Litigation*, MDL No. 2333, the Panel granted plaintiff's motion for transfer of cases involving windows manufactured by the defendant. In that case, the defendant argued that consolidation and transfer was not appropriate due to supposed variations in the defect and in the state law claims alleged. The Panel rejected those arguments, stating that "we have often found

centralization appropriate in products liability actions involving similar products manufactured by the same defendant where a common defect was alleged, even where the alleged injuries, varied." *Id.* (citing *In re Kugel Mesh Hernia Patch Prods. Liab. Litig.*, 493 F. Supp. 2d 1371 (J.P.M.L. 2007).

## II. The Actions Involve Common Questions of Fact and Law Which Could Be Handled More Efficiently in a Consolidated Setting.

The litmus test of transferability and coordination under § 1407 is the presence of common questions of fact. *In re Fed. Election Campaign Act Litig.*, 511 F.Supp. 821, 823 (J.P.M.L. 1979). Common questions are presumed "where two or more complaints assert comparable allegations against identical defendants based on similar transactions or events." *In re Air West, Inc. Securities Litig.*, 384 F. Supp. 609, 611 (J.P.M.L. 1975); *see also In re Cuisinart Food Processor Antitrust Litig.*, 506 F. Supp. 651, 654-655 (J.P.M.L. 1981). Although common questions must predominate, there is no need for absolute uniformity among claims. *See In re Antibiotic Drugs*, 309 F. Supp. 155, 156 (J.P.M.L. 1970) ("applicability of different legal principles will not prevent transfer of an action under section 1407 if the requisite common questions of fact exist"). Here, the common questions do predominate over individual questions of fact in each of the actions. *See In re Asbestos Sch. Products Liab. Litig.*, 606 F. Supp. 713, 714 (J.P.M.L. 1985).

Every action names both Behr and Home Depot as the defendants. The actions are each predicated on practically identical factual allegations and all present extremely similar claims of violations of state consumer protection and unfair competition statutes, violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, as well as breach of implied warranty and unjust enrichment. Each action also prays for similar relief including damages, and equitable, declaratory and injunctive relief.

The actions listed above involve common issues of fact and a common defect, so that centralization will promote the convenience of the parties and witnesses and the just and efficient conduct of the litigation. *See* 28 U.S.C. § 1407. Transfer and centralization will mitigate the possibility of inconsistent rulings, including rulings regarding class certification, and will promote judicial economy by providing a single forum to which future tag-along actions can be transferred. Accordingly, Plaintiffs respectfully moves this Panel for transfer to the Central District of California, the most favorable district for centralization.

### i. The Actions Involve Common, Numerous, and Complex Questions of Fact

"When civil actions involving one or more common questions of fact are pending in different districts," such actions may be transferred for consolidated pretrial proceedings in a single district, based upon a "determination that transfers for such proceedings will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). Each of these requirements is satisfied here, and these cases should therefore be placed in multidistrict litigation.

Each action concerns the same product (DeckOver), the same defect (prone to peeling, chipping, bubbling, and degradation), and the same conduct by the same Defendants (distribution, marketing, warranting, and sale of DeckOver). Each action arises from substantially the same events (reliance on marketing, and the purchase, application, and subsequent manifestation of the defect), and involves substantively comparable proposed classes (consumer purchasers of DeckOver). Moreover, the plaintiffs of the various cases seek to certify a nearly identical nationwide class. The factual questions common to the actions are numerous and complex, including whether DeckOver is a durable resurfacer, and what the expected life of DeckOver is given the presence of the defect.

7

As this Panel has held, when cases all revolve around allegedly "common questions of fact," it is evident that "[c]entralization under Section 1407 is thus necessary in order to prevent duplication of discovery and eliminate the possibility of conflicting pretrial rulings concerning the common factual questions." *In re Oil Spill by "Amoco Cadiz" Off Coast of France on March 16, 1978*, 471 F. Supp. 473, 478 (J.P.M.L. 1979); *see also In re Ashley Madison Customer Data Sec. Breach Litig.*, 148 F. Supp. 3d 1378, 1380 (J.P.M.L. 2015) (where "related actions assert similar, if not identical, consumer fraud claims on behalf of putative nationwide classes," cases "will involve common factual questions" making transfer appropriate under section 1407 even absent "a complete identity or even a majority of common factual issues"); *In re Volkswagen and Audi Warranty Extension Litig.*, 452 F. Supp. 2d 1354, 1355-56 (J.P.M.L. 2006) (centralization under section 1407 appropriate where four actions "involve[d] common questions of fact" and "[p]laintiffs [brought] various state common law claims such as breach of contract and unjust enrichment, in addition to claims under state statutory law concerning consumer fraud or unfair and deceptive trade practices").

Here, the factual overlap between the complaints makes centralization appropriate. Indeed, given the probable identity of relevant documents and witnesses between the actions, "[c]entralization under Section 1407 is necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary." *In re Volkswagen and Audi Warranty Extension Litig.*, 452 F. Supp. 2d at 1355. Where multiple actions are predicated on the same core set of alleged facts, there is no reason for the redundancy and confusion that would arise from having them adjudicated in multiple courts across the country. *See, e.g., In re Pella Corp. Architect & Designer Series Windows Mktg., Sales Practices & Prod. Liab. Litig.*, 996 F. Supp. 2d 1380, 1382 (J.P.M.L. 2014) ("[T]he

Section 1407 requirement of common factual questions is satisfied [if] the subject actions all plainly allege that" the similar products at issue "are defective in the same ways.").

### ii. Transfer and Centralization Will Further the Convenience of the Parties and the Witnesses.

Resolution of these common issues in a single forum would further the convenience of all parties and witnesses. *See* 28 U.S.C. § 1407(a). Because all actions involve similar allegations and factual questions, Plaintiffs in these actions (and any future-filed actions) will require depositions of the same persons and discovery of the same documents. Defendant will likely raise the same discovery objections and seek the same protective orders or privileges in each case. Absent centralization and transfer, all parties will be subjected to duplicative discovery and witnesses will face multiple, redundant depositions. *See In re: Lumber Liquidators Chinese-Manufactured Flooring Products Mktg., Sales Practices and Products Liability Litig.*, 109 F. Supp. 3d 1382, 1383 (J.P.M.L. 2015) ("Centralization will eliminate duplicative discovery"); *see In re Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*, 988 F. Supp. 2d 1364, 1366 (J.P.M.L. 2013) ("Transfer under Section 1407 will offer the benefit of placing all related actions before a single judge who can structure pretrial proceedings to accommodate all parties' legitimate discovery needs while ensuring that common witnesses are not subjected to duplicative discovery demands."). If the cases are consolidated for pretrial proceedings, however, "it is most logical to assume that prudent counsel will combine their forces and apportion their workload in order to streamline the efforts of the parties and witnesses, their counsel and the judiciary, thereby effectuating an overall savings of cost and a minimum of inconvenience to all concerned." *In re MLR, LLC Patent Litig.*, 269 F. Supp. 2d 1380, 1381 (J.P.M.L. 2003) (citing *In re Nissan Motor Corp. Antitrust Litig.*, 385 F. Supp. 1253, 1255 (J.P.M.L. 1974)); *see also In re: Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*, 988 F.

9

Supp. 2d at 1367 (centralizing cases to "avoid unnecessary duplication of discovery and motion practice").

Significantly, discovery in this case will not be closely aligned with any particular venue based solely on where the facts arose. Discovery into Defendants' corporate knowledge and marketing practices, which go to the core of each case, will likely involve the many of the same documents and witnesses regardless of whether the action was brought or the DeckOver was purchased and applied in Washington, North Carolina, California, or elsewhere. Uniform pretrial rulings and schedules will mean that no party is faced with the risk of an inconsistent ruling on an identical issue in another jurisdiction's case. Accordingly, the convenience of the parties and witnesses weighs strongly in favor of centralizing the cases at issue here. *See, e.g., In re: Bank of Am. Wage & Hour Employment Practices Litig.*, 706 F. Supp. 2d 1369, 1371 (J.P.M.L. 2010) (transferring actions because "discovery of defendants' corporate practices w[ould] overlap and...centralized proceedings w[ould] foster efficiencies").

Centralization will mitigate these problems by enabling a single judge to manage discovery and the parties to coordinate their efforts. This will reduce litigation costs and minimize inconvenience to the parties and witnesses, to the benefit of litigants, third parties, and the courts. *See In re Enfamil Lipil Mktg. and Sales Practices Litig.*, 764 F. Supp. 2d 1356, 1357 (J.P.M.L. 2011) ("Centralizing the actions will allow for the efficient resolution of common issues and prevent unnecessary or duplicative pretrial burdens from being placed on the common parties and witnesses."); *In re: Lumber Liquidators Chinese-Manufactured Flooring Products Mktg., Sales Practices and Products Liability Litig.*, 109 F. Supp. 3d at 1383 ("Centralization will...conserve the resources of the parties, their counsel and the judiciary.").

### iii. Consolidation Will Promote Just and Efficient Conduct of These Actions.

Finally, consolidation will "promote the just and efficient conduct of" these actions. 28 U.S.C. § 1407(a). It will do so in primarily two ways. First, it will streamline and ensure consistent resolution of class certification for the putative class actions. Second, it will more readily facilitate the handling of future actions that may be filed on the same subject matter.

First, because Plaintiffs bring putative nationwide class actions, consolidation will ensure consistency in adjudications related to class certification. If multiple actions are pending across district courts in several different circuits, the possibility exists that one plaintiff could prevail on a class certification motion while another plaintiff is unable to certify the same class. Such an outcome is not desirable for any party, and here, the only way to avoid that risk is to have a single judge decide whether a class action is the appropriate vehicle for resolving the plaintiffs' disputes. *See, e.g., In re Rio Hair Naturalizer Products Liab. Litig.*, 904 F. Supp. 1407, 1408 (J.P.M.L. 1995) (holding that "[c]entralization under Section 1407 is necessary in order to . . . prevent inconsistent pretrial rulings (especially with respect to overlapping class certification requests)"); *In re Value Line Special Situations Fund Litig.*, 334 F. Supp. 999, 1000 (J.P.M.L. 1971) (holding that "conflicting overlapping claims of class representation [should be] presented to one judge" in order to avoid "inconsistent determinations.").

Additionally, many of the same pretrial disputes are likely to arise in each action. Likewise, due to the similar causes of action in each complaint, Defendants will likely assert the same defenses, as well as file motions to dismiss and summary judgment on the same claims based on the same arguments in each action. Centralization is therefore necessary to prevent inconsistent pretrial rulings on many central issues, which would present significant problems due to the substantial consistency in factual and legal allegations among all Actions. *See In re:*

11

*Lumber Liquidators Chinese-Manufactured Flooring Products Mktg., Sales Practices and Products Liability Litig.*, 109 F. Supp. 3d at 1383 ("Centralization will...avoid inconsistent pretrial rulings (including on issues of class certification and *Daubert* motion practice").

Finally, centralization will also help facilitate efficient management of future cases. This motion seeks centralization of Plaintiff's cases across nine (9) jurisdictions, each of which has been filed since June 2017. Should additional actions be filed, it will further complicate case management through the need for additional document discovery, depositions, and motion practice on the same subject matters. Only centralization under section 1407 will allow for an efficient and streamlined adjudication of these issues as they arise. Especially in the context of class actions, this Panel has consistently determined that consumer fraud litigation is sufficiently complex to warrant transfer. *See, e.g., In re Tyson Foods, Inc. Chicken Raised Without Antibiotics Consumer Litig.*, 582 F. Supp. 2d 1378, 1379 (J.P.M.L. 2008) (centralizing nine actions).

By eliminating the risk of duplicative discovery and the corresponding risk of repetitive and inconsistent pretrial rulings, centralization will foster judicial economy and fairness. It will permit the actions to be effectively and efficiently managed while conserving the resources of the parties, attorneys, and judicial system.

### B. THE CENTRAL DISTRICT OF CALIFORNIA IS AN APPROPRIATE AND OPTIMAL TRANSFERREE FORUM.

Plaintiffs respectfully submit that Central District of California is the superior forum for the centralized action.

In choosing an appropriate forum, this Panel considers: (1) where the largest number of cases is pending; (2) where discovery has occurred; (3) where cases have progressed furthest; (4) the site of the occurrence of the common facts; (5) where the cost and inconvenience will be

minimized; and (6) the experience, skill, and caseloads of available judges. *Manual for Complex Litigation*, § 20.132 (4th ed. 2004). In light of these criteria, the Central District of California is the most appropriate forum for the transfer and centralization of these actions, primarily because it has a judiciary that is well-experienced yet relatively less burdened with pending multidistrict litigation. Judge Guilford would be an excellent choice to preside over this litigation.

The first factor weighs heavily in favor of the Central District of California. There are nine (9) actions in total, two (2) of which are pending in California. *See* Schedule of Actions. Prior to consolidation, there were six actions pending in the Central District of California, more than any other district. *See* Ex. 4, Schedule of Actions. In contrast, all other districts have only one case pending. *See* Schedule of Actions.

The second factor is not as relevant here because all of the cases have either not entered into discovery or are only in the preliminary stages of discovery.

The third factor weighs in favor of the Central District of California because that action has progressed much further than the other actions. Judge Guilford has already ruled on a motion to consolidate, Home Depot has moved to dismiss and Behr has answered, and the parties have already exchanged initial disclosures. *See* Ex. 4.

The fourth factor is not determinative. DeckOver is sold throughout the United States, so no one specific location is the dominant site of common facts.

The fifth factor favors the Central District of California as where the costs and inconvenience will be minimized. The Behr defendants are headquartered in Santa Ana, California, which sits in the Central District of California. The Behr defendants are responsible for the research, development, and manufacture of DeckOver. As such, the Behr defendants will have the greatest corporate knowledge regarding the existence of the defect and the

substantiations for Defendants' marketing. Thus, discovery costs will be minimized by transferring the actions to the Central District of California. In contrast, the other defendants are headquartered in states – Michigan and Georgia – with no pending cases. Further, the plaintiffs are themselves spread across nine (9) jurisdictions, making the Central District of California the least inconvenient venue for the transferred actions.

As to the sixth factor, the MDL docket in the Central District of California combines a relative lack of congestion with judges well-experienced in managing complex multidistrict litigation such as this. The Central District of California has active nine MDLs, which compares favorably with the 22 active for the Northern District of California and the 11 active MDLs in the Northern District of Illinois. Additionally, this Panel has previously recognized Judge Guilford as "an experienced transferee judge." *In re Wells Fargo Auto Insurance Marketing and Sales Practices Litig.*, 2017 U.S. Dist. LEXIS 164942 (J.P.M.L. Oct. 5, 2017).

In addition to the above considerations, many of the plaintiffs as well as Behr and Home Depot have already consented to centralization in the Central District of California. Approximately six (6) cases were filed directly in the Central District of California with fifteen (15) plaintiffs seeking to represent twelve (12) states. Of the six cases, three of the cases were assigned or transferred by local rule to Judge Guilford, two were assigned to Judge Staton, and one was assigned to Judge Carter. *See* Ex. 11. The Central District of California plaintiffs all agreed that "judicial efficiency would be best served through consolidation of the six actions before one judge." *Id.* at p. 1. Notably, plaintiffs in the six actions wrote that "there is no clear downside to consolidating the cases. All six are in the early states of litigation...And discovery has either yet to begin or is at the earliest stages in each of the cases." *Id.* at p. 4. Behr and Home Depot, both named in all six of the actions, did not oppose centralization in the Central District

of California. *Id.* at p. 2. After this motion was filed, Judge Staton and Judge Carter both transferred their cases, three in total, to Judge Guilford. *See* Ex. 12 at p. 2. Judge Guilford agreed to consolidate the six cases on September 13, 2017. *See* Ex. 4.

When considered together, these factors support transfer and centralization in the Central District of California.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that their motion be granted and that the Panel order transfer of the Actions listed in the attached Schedule of Actions, plus any future tag-along actions, to the Central District of California for consolidated pretrial proceedings before Judge Andrew Guilford pursuant to 28 U.S.C. § 1407.

Dated: December 4, 2017

Respectfully Submitted,

/s/ Daniel K. Bryson
Daniel K. Bryson
Patrick M. Wallace
WHITFIELD BRYSON & MASON LLP
900 West Morgan Street
Raleigh, NC 27609
Tel: (919) 600-5000
Fax: (919) 600-5035
Email: dan@wbmllp.com
Email: pat@wbmllp.com

*Counsel for Plaintiffs Linne Rose and Joan Edwards*