**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| KATHLEEN BISHOP, et al., individually and on behalf of the putative class, | Case No. 17-cv-4464 |
| Plaintiffs, | |
| v. | Hon. John Robert Blakey |
| BEHR PROCESS CORP., a California corporation, et al., | Magistrate Judge Mary M. Rowland |
| Defendants. | |

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF**
**CLASS ACTION SETTLEMENT, CERTIFICATION OF A SETTLEMENT CLASS,**
**APPOINTMENT OF CLASS COUNSEL, AND RELATED RELIEF**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................ii

INTRODUCTION ...........................................................................................................1

FACTUAL BACKGROUND .............................................................................................2

    A.    The Settlement's Terms.....................................................................................2

    B.    Class Members' Overwhelmingly Positive Response to the Settlement............4

ARGUMENT ................................................................................................................5

I.      THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ..................................5

II.    THE NOTICE PROGRAM WAS HIGHLY EFFECTIVE..................................................7

III.   THIS COURT SHOULD GRANT THE SETTLEMENT FINAL APPROVAL ..............9

    A.    The Settlement Provides Considerable Relief Relative to the Risks
          of Continued Litigation ........................................................................10

    B.    The Complexity, Expense and Likely Duration of the Litigation
          Supports Final Approval........................................................................16

    C.    Class Members' Overwhelmingly Positive Response to the
          Settlement Warrants Final Approval ......................................................17

          1.    Objections and Opt-Outs Were *De Minimis*..............................17

          2.    The Settlement Fairly Compensates the Class ........................18

    D.    The Opinion of Class Counsel Weighs in Favor of Approval..............................19

    E.    The Stage of the Proceedings and the Amount of Discovery
          Completed at the Time of Settlement Supports Final Approval ..........................20

    F.    There Is No Evidence of Fraud or Collusion.........................................................21

CONCLUSION ..........................................................................................................22

i

**TABLE OF AUTHORITIES**

<u>CASES</u>

*Amchem Prods., Inc. v. Windsor*,
　　521 U.S. 591 (1997) ...................................................................................................... 6

*Aranda v. Carribbean Cruise Line*,
　　No. 12-cv-4069, 2017 WL 818854 (N.D. Ill. Mar. 2, 2017) ............................................ 17

*Armstrong v. Bd. of Sch. Directors of City of Milwaukee*,
　　616 F.2d 305 (7th Cir. 1980) ........................................................................................ 10

*Chambers vs. Whirlpool Corp.*,
　　214 F. Supp. 3d 877 (C.D. Cal. 2016) ............................................................................ 11

*Edwards v. First Am. Corp.*,
　　No. 07-CV-3796, 2016 WL 8999934 (C.D. Cal., Oct. 4, 2016) ...................................... 11

*Felzen v. Andreas*,
　　134 F.3d 873 (7th Cir. 1998) ........................................................................................ 10

*Gehrich v. Chase Bank USA, N.A.*,
　　316 F.R.D. 215 (N.D. Ill. 2016) ............................................................................. *passim*

*In re Gen. Motors Corp. Engine Interchange Litig.*,
　　594 F.2d 1106 (7th Cir.1979) ........................................................................................ 13

*In re Kentucky Grilled Chicken Coupon Mktg. & Sales Practices Litig.*,
　　No. 09 C 7670, 2011 WL 13257072 (N.D. Ill. Nov. 30, 2011) ......................................... 9

*In re Mexico Money Transfer Litig.*,
　　164 F. Supp. 2d 1002 (N.D. Ill. 2000) ............................................................................ 17

*In re Rust-Oleum Restore Mktg., Sales Practices and Prods. Liab. Litig.* ("*Rust-Oleum*"),
　　No. 1:15-cv-01364, ECF 105, 127 (N.D. Ill.) .................................................................. 15

*In re Sw. Airlines Voucher Litig.*,
　　No. 11-cv-8176, 2013 WL 4510197 (N.D. Ill. Aug. 26, 2013) .......................................... 18

*In re Zurn Pex Plumbing Prod. Liab. Litig.*,
　　267 F.R.D. 549 (D. Minn. 2010) .................................................................................... 14

*In re: Sears, Roebuck & Co. Front-loading Washer Prod. Liab. Litig.*,
　　No. 06 C 7023, 2016 WL 772785 (N.D. Ill. Feb. 29, 2016) ...................................... *passim*

ii

*Isby v. Bayh*,
    75 F.3d 1191 (7th Cir. 1996) ......................................................................5, 13

*Kaufman v. Am. Express Travel Related Servs., Co.*,
    No. 07-CV-1707, 2016 WL 806546 (N.D. Ill. Mar. 2, 2016) ............................8

*Lucas v. Vee Pak, Inc.*,
    No. 12-CV-09672, 2017 WL 6733688 (N.D. Ill. Dec. 20, 2017) ....................21

*Mangone v. First USA Bank*,
    206 F.R.D. 222 (S.D. Ill. 2001) .....................................................................18

*Mars Steel Corp. v. Continental Ill. Nat. Bank and Trust Co. of Chicago*,
    834 F.2d 677 (7th Cir. 1987) .........................................................................21

*McKinnie v. JP Morgan Chase Bank, N.A.*,
    678 F. Supp. 2d 806 (E.D. Wis. 2009) .............................................................8

*Mirfasihi v. Fleet Mortg. Corp.*,
    356 F.3d 781 (7th Cir. 2004) ............................................................................8

*Mullins v. Direct Digital, LLC*,
    795 F.3d 654 (7th Cir. 2015) ............................................................................8

*Pearson v. NBTY, Inc.*,
    772 F.3d 778 (7th Cir. 2014) ..........................................................................10

*Reynolds v. Beneficial Nat. Bank*,
    288 F.3d 277 (7th Cir. 2002) ...................................................................11, 15

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011)......................................................*passim*

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
    463 F.3d 646 (7th Cir. 2006) ...................................................................10, 11

*Traxler, et al., v. PPG, et al.* ("*Traxler*"),
    No. 1:15-cv-00912, ECF 64-2, 74 (N.D. Ohio).........................................15, 16

*Wright v. Nationstar Mortgage LLC*,
    No. 14 C 10457, 2016 WL 4505169 (N.D. Ill. Aug. 29, 2016) .......................21

## STATUTES

Fed. R. Civ. P. 23(a) ...................................................................................................5, 6, 7

Fed. R. Civ. P. 23(b)(3) ...............................................................................................2, 6, 7

Fed. R. Civ. P. 23(c)(2)(B)(v) .........................................................................................17

Fed. R. Civ. P. 23(c)(2)(B) .....................................................................................7, 8, 17

Fed. R. Civ. P. 23(e) ..........................................................................................................5

Fed. R. Civ. P. 23(e)(2) .....................................................................................................5

Fed. R. Civ. P. 23(e)(5) ...................................................................................................17

28 U.S.C. § 1715 ................................................................................................................8

## OTHER

*Newberg on Class Actions* § 11.41 ................................................................................10

## INTRODUCTION

Plaintiffs brought this class action on behalf of consumers who bought and used DeckOver, a deck resurfacing paint product made by Behr and sold at Home Depot stores. Although DeckOver was marketed as being worth its premium price, Plaintiffs allege DeckOver is not actually durable, and instead quickly starts flaking, peeling, and separating from underlying surfaces. Consumers' frustration has thus been twofold: first with the purchase of the DeckOver itself, and second with the need to spend additional money removing DeckOver after it failed. In some instances, Class Members[1] contend they have had to repair their decks, or even replace them altogether.

After more than a year of litigation[2] and protracted settlement discussions, the parties reached this Settlement, which the Court preliminarily approved on August 10, 2018. The proposed Settlement permits Class Members to submit claims for refunds of the DeckOver they purchased, and for reimbursement of a large portion of their removal and repair costs. Plaintiffs and their counsel view this as a highly favorable settlement. As detailed below, the Settlement not only provides important relief to consumers now, without the need for protracted litigation, but also compares favorably to other recent deck resurfacer settlements.

Following preliminary approval, the settlement administrator disseminated Notice and the Claims Period began. Class Members' response has been overwhelmingly positive. Thus far, approximately 4,812 Class Members have submitted claims, approximately 58% of which seek both refunds of the DeckOver they purchased and reimbursement for their deck repair costs. As

---

[1] Plaintiffs submitted the Settlement Agreement ("Settlement" or "SA") contemporaneously with Plaintiffs' Unopposed Motion for Preliminary Approval. ECF 61-1. The capitalized terms used in this Motion are defined in Section 1 of the Settlement.

[2] A summary of the litigation and the Parties' mediation efforts may be found in Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement, ECF 61, and Plaintiffs' Motion for Attorneys' Fees, Expenses and Incentive Awards. ECF 96.

predicted in last month's motion for attorney's fees and costs, the estimated total value of Class Member claims is on pace to exceed $7.5 million. ECF No. 96. In contrast to the high level at which Class Members are participating in the Settlement, only five (5) objections were submitted (3 of which have since been voluntarily withdrawn) and only nine (9) Class Members asked to exclude themselves from the Class. Class Members' support for the Settlement is overwhelming. Accordingly, Plaintiffs respectfully request that the Court confirm its prior certification of the Class, and finally approve the Settlement as fair, reasonable and adequate.

## FACTUAL BACKGROUND

### A.       The Settlement's Terms

The Settlement will provide considerable benefits to the Class. The Settlement entitles Class Members to refunds for each gallon of DeckOver they purchased, as well as reimbursement for documented, reasonable repair costs they incurred, or will incur, to fix their decks. The Settlement's key terms are:

*The Settlement Class*: The Class consists of:

All persons and entities that, between September 1, 2012 and the date of Preliminary Approval (i.e., June 27, 2018) purchased DeckOver in the United States (or caused it to be purchased) and applied it (or caused it to be applied) to any property located in the United States owned or leased by the purchasing person or entity.

Excluded from the Class are Defendants, and any entity in which Defendants have a controlling interest or which have a controlling interest in Defendants; Defendants' legal representatives, assigns and successors; and all judges who have presided over the Action and any member of the judges' immediate families.

SA § II(A)(11). The Class is an opt-out class under Rule 23(b)(3). *Id.*, § VI.

*Payments to the Settlement Class*: The Settlement is not structured as a common fund, thus there is no cap on the total amount that will be paid to the Class. Each Class Member who submits an approved Claim will be entitled to a refund of the DeckOver they purchased. *See* SA

2

§§ II(A)(7). The Settlement requires minimal proof of purchase—a mere photo of an open DeckOver container will suffice. *Id.*, § IV(A)(1)(b). And even if Class Members cannot provide proof of the actual price they paid, the Settlement still entitles them to a refund of $30.00 per gallon (which represents the typical price at which DeckOver was sold during the Class Period). *Id.*, § IV(A)(1).

The Settlement also entitles eligible Class Members to claim up to 75% of their deck repair costs (at a maximum of $6 per sq. ft.). *Id.*, § IV(A)(2). Class Members who repaired the damage themselves still are entitled to compensation of up to 75% of $4 per square foot of the repaired surface. *Id.*, § IV(A)(2)(b). This relief will fairly compensate the vast majority of Class Members. Assuming an average deck size of 350 sq. ft.,[3] the average claimant could claim up to $2,100 in repair compensation. That sum is within the range of deck repair costs nationally ($726 - $2,514, an average of $1,608 per deck), according to HomeAdvisor.[4]

Recognizing that some claimants may face unusual circumstances, the Settlement also provides a free ADR mechanism for anyone who believes they should receive additional compensation. *Id.* § IV(A)(3). Class Members who elect to participate in ADR are only required to make a simple written submission, do not have to travel, and will have their claims mediated by retired federal Judge Wayne Andersen—at Behr's expense. *Id.* Because Judge Andersen oversaw the Parties' settlement discussions, he is intimately familiar with the DeckOver product and the problems consumers have encountered following application. Herrera Decl., ¶ 17.

---

[3] Plaintiffs' consulting expert directed Class Counsel to publications that reported that the average US deck measures approximately 300-400 sq. ft., Declaration of Daniel O. Herrera Supp. Final Approval ("Herrera Decl."), ¶ 6, though Behr has noted that in its experience the average deck size is closer to 150 sq. ft.

[4] https://www.homeadvisor.com/cost/outdoor-living/repair-a-deck/ (last visited Nov. 20, 2018); *see also* Herrera Decl., ¶ 6.

***Separate Payment by Behr of Administration Expenses***: Behr has paid, and will continue to pay, all costs relating to Notice and settlement administration, including the costs of ADR. SA §§ II(A)(25),VI(A). Angeion Group ("Angeion"), a leading class action settlement administrator jointly selected by the parties, has administered the Settlement. Angeion effected Notice consistent with the Settlement and the Court's preliminary approval order, providing direct notice to about 28,000 Class Members, and also effected a comprehensive publication and online advertising Notice campaign. *See* Declaration of Steven Weisbrot ("Wiesbrot Decl."), ¶¶ 5-12. The parties are confident that Notice reached a sizable majority of the Class.

### B. Class Members' Overwhelmingly Positive Response to the Settlement

Although the Claims Period does not close in its entirety until June 29, 2019, as of November 15, 2018, 4,812 Class Members already have filed claims. Herrera Decl., ¶ 14. Based on a random sampling of 100 claims for repair expenses submitted to date,[5] Plaintiffs estimate the average value of such claims is $1,955.61 (approximately $1,752 in repair compensation, and $203 in refunds for product purchases), and thus estimate the aggregate value of all claims submitted to-date at around $5.7 million. *Id.*, ¶ 15. Moreover, the total may rise materially in light of the 521 Class Members who have requested ADR before Judge Andersen at Behr's expense, *id.*, ¶ 17, a considerable value in light of Judge Andersen's experience and typical hourly rate.

Objections and exclusions were minimal. Class Counsel received just five (5) objections and nine (9) requests for exclusion. *Id.*, ¶¶ 18-20. Of those, three (3) of the five (5) individuals who objected voluntarily withdrew their objections and elected to participate in the Settlement, *id.*, ¶ 20, and three (3) of the nine (9) exclusion requests simply explained that they had already

---

[5] Plaintiffs describe this process in greater detail in their Motion for Attorneys' Fees. *See* ECF 96, 9-10.

independently resolved their claims with Behr to their satisfaction. *Id*, ¶ 19.

**ARGUMENT**

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." While "[f]ederal courts naturally favor the settlement of class action litigation[,]" *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996), the Court must undertake three essential tasks before granting a settlement final approval.

First, a court must determine whether a proposed settlement class meets the requirements of Rules 23(a) and (b). *See Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 223 (N.D. Ill. 2016). Second, courts must confirm that the notice provided to class members satisfied due process and Federal Rule of Civil Procedure 23(e). *In re: Sears, Roebuck & Co. Front-loading Washer Prod. Liab. Litig.*, No. 06 C 7023, 2016 WL 772785, at *7 (N.D. Ill. Feb. 29, 2016); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 595–96 (N.D. Ill. 2011). Lastly, a court may approve a proposed settlement "only if it determines after a hearing that the proposed settlement is 'fair, reasonable, and adequate.'" *Id.* (quoting Fed. R. Civ. P. 23(e)(2)).

The Class easily meets the threshold requirements for certification set forth in Rule 23, the settlement administrator effectively carried out the Notice program this Court previously approved, and the Settlement—which confers substantial financial benefits on Plaintiffs and Class Members alike without the risks of continued litigation—undoubtedly is "fair, reasonable and adequate." *Id.* Accordingly, the Court should grant final certification to the Class and finally approve the proposed Settlement.

## I. THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

The Settlement's benefits can be realized only through final certification of the proposed Class. Federal Rule of Civil Procedure 23 provides that:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The Supreme Court has summarized these four basic requirements as: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). The Class also must meet at least one of the three criteria under Rule 23(b), *Gehrich*, 316 F.R.D. at 223; in this case, that "questions of law or fact common to members of the class predominate, and the class action is a superior method for adjudication." Fed. R. Civ. P. 23(b)(3).

Plaintiffs carry the burden to prove that the class certification prerequisites are met, and that they possess the same interest and suffered the same injury as the Class they seek to represent. *See In re: Sears*, 2016 WL 772785, at *8. However, "the requirements for a settlement class are generally less onerous than those for a trial class." *Id.* That is because "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems… for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

The Court previously certified the following Class for settlement purposes pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3):

> All persons and entities that, between September 1, 2012 and the date of Preliminary Approval (i.e., June 27, 2018) purchased DeckOver in the United States (or caused it to be purchased) and applied it (or caused it to be applied) to any property located in the United States owned or leased by the purchasing person or entity.

> Excluded from the Class are Defendants, and any entity in which Defendants have a controlling interest or which have a controlling interest in Defendants; Defendants' legal representatives, assigns and successors; and all judges who have presided over the Action and any member of the judges' immediate families.

As set forth in Plaintiffs' Motion for Preliminary Approval,[6] and as this Court confirmed in granting that motion, the proposed Class easily satisfies the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3). Accordingly, Plaintiffs respectfully request that the Court once again find that the Class satisfies those requirements and grant final certification.

## II.    THE NOTICE PROGRAM WAS HIGHLY EFFECTIVE

Constitutional due process and Federal Rule of Civil Procedure 23(c)(2)(B) require that absent class members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." "What comprises the best notice possible depends on various elements, including the size of the class, whether the class members can be easily identified, and the probability notice will reach the intended audience." *Schulte*, 805 F. Supp. 2d at 595.

As a threshold matter, no one has objected to the sufficiency of notice, entitling the Notice provided in this action to a presumption of adequacy. *See, e.g., id.* at 595. Nevertheless, 'the notice provided went well beyond what was required." *Gehrich*, 316 F.R.D. at 232.[7]

Where lists of class members and their addresses are readily ascertainable, courts court generally demand individual notice. *Schulte*, 805 F. Supp. 2d at 595. The Parties thus worked to identify potential Class Members through their records, *see* Herrera Decl., ¶¶ 11-13, and Angeion successfully delivered Notice—via email or physical mailing—to 96.8% of all Class Members ascertainable from Defendants' records. *See* Weisbrot Decl., ¶¶ 7-11. This near-perfect success rate greatly exceeds direct notice rates in other settlements finally approved in this District. *See, e.g., In re: Sears,* 2016 WL 772785, at *7 (granting final approval where direct

---

[6] Plaintiffs hereby incorporate and adopt their arguments in support of class certification as set forth in their Motion for Preliminary Approval of Settlement. *See* ECF 61, 8-14.

[7] Notice also was sent to the appropriate federal and state officials, as required under the Class Action Fairness Act, 28 U.S.C. § 1715. Weisbrot Decl., ¶ 4.

notice reached 89% of intended recipients). And, to ensure that all Class Members had ample time to evaluate the Settlement in advance of the objection and opt-out deadline, the Parties even delayed commencement of the Notice program (and asked this Court to modify the preliminary approval order accordingly) to ensure they identified and collected all reasonably available sources of Class Member identification and contact information prior to disseminating Notice. *See* ECF 89, 91, 92; Herrera Decl., ¶¶ 12-13. *Cf. Kaufman v. Am. Express Travel Related Servs., Co.*, No. 07-CV-1707, 2016 WL 806546, at *4 (N.D. Ill. Mar. 2, 2016) (noting the court denied plaintiffs' first motion for final approval because 8.5% of known class members did not receive direct notice). The Parties' efforts ensured that all known Class Members received "the best notice that is practicable under the circumstances . . . ." Fed. R. Civ. P. 23(c)(2)(B).

For class members whom cannot be identified from a defendant's records, "courts may use alternative means such as notice through third parties, paid advertising, and/or posting in places frequented by class members, all without offending due process." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 665 (7th Cir. 2015). The Parties thus effectuated Notice in two periodicals with strong readership among likely Class Members. *See* Weisbrot Decl., ¶ 6. This is typically "an acceptable substitute" for individual notice. *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 786 (7th Cir. 2004); *see also McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 813 (E.D. Wis. 2009) ("publication of notice in a nationally-circulated newspaper and in an online posting constitutes an acceptable substitute").

Angeion also executed an expansive online Notice campaign that targeted individuals rather than particular websites. The banner notice component ran for four consecutive weeks and served a total of 35,861,692 impressions, and Angeion estimates it delivered an approximate 74.44% reach with an average frequency of 3.05 views per person, Weisbrot Decl., ¶ 12, all of which exceeded Angeion's projections. *See* ECF 66, ¶ 8. This online campaign proved far more

effective than those utilized in connection with other settlements finally approved within this District. *See, e.g., In re: Sears,* 2016 WL 772785, at *7 (finding notice adequate where four-week banner advertisement program effected through Facebook produced just over 11 million impressions); *In re Kentucky Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, No. 09 C 7670, 2011 WL 13257072, at *2 (N.D. Ill. Nov. 30, 2011) (finding notice adequate where four-week banner advertisement program effected through Facebook produced just over 18 million impressions). The Parties buttressed these efforts by creating a settlement website and a dedicated toll-free line that provides automated responses to common questions, Weisbrot Decl., ¶¶ 13-17, both of which experienced significant traffic. *See In re Kentucky Grilled Chicken*, 2011 WL 13257072, at *2. There is no question but that the Notice program was highly effective.

The current claims rate confirms that conclusion. Plaintiffs estimate that, to date, Class Members have submitted claims with an estimated aggregate value of $5.7 million, Herrera Decl., ¶ 15, even though the Claims Period will remain open for most Class Members until February 10, 2019, and for certain persons until June 29, 2019. *Id.*, ¶ 16.

"[U]nder the circumstances of this case, the Settlement Administrator's notice program was the best notice that is practicable and was reasonably calculated to reach interested parties." *In re: Sears*, 2016 WL 772785, at *8. As such, the Notice program's success counsels in favor of final approval.

## III. THIS COURT SHOULD GRANT THE SETTLEMENT FINAL APPROVAL

To evaluate the fairness of class actions settlements, courts within the Seventh Circuit consider the following factors:

> [1] the strength of plaintiffs' case compared to the amount of defendants' settlement offer,
>
> [2] an assessment of the likely complexity, length and expense of the litigation,

[3] an evaluation of the amount of opposition to settlement among affected parties,

[4] the opinion of competent counsel, and

[5] the stage of the proceedings and the amount of discovery completed at the time of settlement.

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). Recent Seventh Circuit decisions also counsel courts to evaluate settlements for possible collusion. *See generally Pearson v. NBTY, Inc.*, 772 F.3d 778, 779 (7th Cir. 2014). A reviewing court "do[es] not focus on individual components of the settlements, but rather view[s] them in their entirety in evaluating their fairness," and considers the facts "in the light most favorable to the settlement." *Armstrong v. Bd. of Sch. Directors of City of Milwaukee*, 616 F.2d 305, 315 (7th Cir. 1980), *abrogated on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998).

Here, the proposed Settlement meets the criteria for final approval. As set forth herein and in Plaintiffs' Motion for Attorneys' Fees, ECF 96, the proposed Settlement is the product of extensive, arm's-length negotiations overseen by an experienced federal jurist. *See* Herrera Decl., ¶¶ 7-8, 10; *Newberg on Class Actions* § 11.41 (fairness of a class settlement may be initially presumed when the settlement has been arrived at by arm's length bargaining, among other considerations). The Settlement, which Class Members have received enthusiastically, also provides substantial and immediate relief to the Class while obviating the significant risks of continued litigation. The Settlement is fair, reasonable and adequate in all respects, and merits final approval.

## A.     The Settlement Provides Considerable Relief Relative to the Risks of Continued Litigation

"Because the Settlement promises to yield benefits to the class that are significant in light of Defendant[s'] potentially strong defenses should the case proceed to trial, the first factor under *Synfuel* counsels approval." *Schulte*, 805 F. Supp. 2d at 579.

"The most important factor relevant to the fairness of a class action settlement is the . . . the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Synfuel*, 463 F.3d at 653 (7th Cir. 2006) (internal quotations omitted). "In conducting this analysis, the district court should begin by 'quantify[ing] the net expected value of continued litigation to the class.'" *Id.* (*quoting Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 284-85 (7th Cir. 2002)). "To do so, the court should 'estimat[e] the range of possible outcomes and ascrib[e] a probability to each point on the range.'" *Synfuel*, 463 F.3d at 653 (*quoting Reynolds*, 288 F.3d at 285). Although the Seventh Circuit has recognized that '[a] high degree of precision cannot be expected in valuing a litigation,' the court should nevertheless 'insist[ ] that the parties present evidence that would enable [ ] possible outcomes to be estimated,' so that the court can at least come up with a 'ballpark valuation.'" *Synfuel*, 463 F.3d at 653 (*quoting Reynolds*, 288 F.3d at 285).

Courts typically begin this analysis by quantifying the value of the class' claims in the aggregate assuming a full victory on the merits, then comparing the expected value of continued litigation to the settlement's value to the class. *See, e.g., Schulte*, 805 F. Supp. 2d at 579-85. This Court, however, need not consider the value of the Class' claims in the aggregate because the settlement is an uncapped, claims-made settlement. *See, e.g., Chambers vs. Whirlpool Corp.*, 214 F. Supp. 3d 877, 889, 892 (C.D. Cal. 2016) (evaluating the fairness of the amount offered in claims-made settlement on a per-claim basis); *Edwards v. First Am. Corp.*, No. 07-CV-3796, 2016 WL 8999934, at *7 (C.D. Cal., Oct. 4, 2016) (same). The Court should instead compare the relief the Settlement offers individual Class Members to what they might receive if the case proceeds to trial. *See, e.g., In re: Sears*, 2016 WL 772785, at *9–10. Viewed through that lens, there is no question that the first *Synfuel* factor supports approval.

11

The Settlement offers substantial relief to every Class Member who files a valid claim and provides minimal proof. In addition to refunding Class Members the purchase price of the DeckOver product (subject to minimal proof requirements), *see* SA §§ IV(A)(1), Behr also will reimburse claimants up to seventy-five percent (75%) of costs they incurred, or will incur, to remediate their decks, at a maximum of $6 per square foot of a deck's surface area. *Id.*, § IV(A)(2). This fairly compensates Class Members who need to repair their decks in their entirety to remediate the damage DeckOver caused: assuming an average deck size of 350 sq. ft., the average claimant could submit a damages claim of up to $2,100, a sum which is on the high end of the range of the average cost of deck repair nationally. Significantly, Class Counsel's initial analysis of claims submitted to date reveals that the average Class Member seeking compensation for repair expenses has submitted a claim worth approximately $1,955.61, Herrera Decl., ¶ 15, a figure in line with the average cost of deck repair.

Settlement administration and Notice expenses will not reduce Class Member compensation because Behr agreed to separately pay those costs. SA §§ II(A)(25),VI(A). Nor will Class members see their claims reduced if the claims rate exceeds the Parties' expectations, because the Settlement is *uncapped*. And although Class Counsel have petitioned the Court for a fee award of twenty percent (20%) of each approved claim, claimants will still recoup 60% of their repair costs. Even claimants subject to the $6 cap will be fairly compensated under Plaintiffs' proposed fee structure. For example, a claimant seeking $2,100 in repair relief would receive $1,680—still more than the average cost of deck repair. Some Class Members may, admittedly, face unique circumstances that lead them to believe they require compensation beyond the considerable relief the Settlement affords. *See, e.g.,* Cull Obj., ECF 106 (asserting that he received a repair estimate of $19,600, while he would recover only $6,900 under the

Settlement). But not only are such concerns atypical—as the objection and opt-out rates imply—they also do not militate against final approval.

*First*, as is true of all class action settlements, the Settlement allowed the few dissatisfied Class Members to exclude themselves from the Class and pursue individual litigation. SA §§ VII(A)-(E).

*Second*, the Settlement provides Class Members with a superior alternative to opting out: ADR before the Honorable Wayne Andersen (Ret.) *at Behr's expense*. Judge Andersen is a highly regarded mediator who is intimately familiar with the facts of this case, and the Parties expect him to devote his full attention to each ADR request. *See* Herrera Decl., ¶ 17. Moreover, the ADR option only requires Class Members to make a simple written submission outlining their claims, and does not obligate them to travel to Chicago. ADR thus provides Class Members an opportunity to present their claims to an experienced federal jurist without incurring the expense of commencing litigation and retaining counsel.

*Third*, and perhaps most importantly, the Settlement is not inadequate simply because it does not afford *every* Class Member *full relief*. "[T]he court should not 'reject[ ]' a settlement 'solely because it does not provide a complete victory to plaintiffs,' for 'the essence of settlement is compromise.'" *Gehrich*, 316 F.R.D. at 228 (*quoting Isby*, 75 F.3d at 1200). "An acceptable settlement is properly 'a bilateral exchange ... where both sides gain as well as lose something.'" *Gehrich*, 316 F.R.D. at 228 (approving TCPA settlement that resulted in actual per claimant recovery of $52.50 though "complete victory for [p]laintiffs" would have entitled class members to $500-$1,500 each) (*quoting In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1135 (7th Cir.1979)); *see also Schulte*, 805 F. Supp. 2d at 583 (noting that courts routinely approve settlements that provide the class with 10% or less of its potential maximum recovery).

The Settlement's adequacy is particularly apparent when juxtaposed against the risks of continued litigation. A complete victory is anything but certain; Behr, like every manufacturer that has faced and ultimately settled class actions involving resurfacers, planned to contend that DeckOver failed only if Class Members did not prepare their surfaces and apply the product in accordance with Behr's instructions, including that individual Class Members' decks were structurally unsound at the time that DeckOver was applied. *See* Behr's Ans., ECF 79, ¶¶ 484-86, 488 (ninth, tenth, eleventh and thirteenth affirmative defenses).

Plaintiffs believe they would have overcome these defenses by establishing that DeckOver is inherently defective and prone to fail regardless of how it is applied or maintained. *See, e.g., In re Zurn Pex Plumbing Prod. Liab. Litig.*, 267 F.R.D. 549, 563 (D. Minn. 2010) ("If Plaintiffs can ultimately prove that [the Products] were not merchantable at the time of purchase, evidence regarding . . . improper installation is not relevant to Plaintiffs' breach of warranty claim."). If Plaintiffs' efforts failed, however, these individualized considerations may have precluded certification of a damages class and instead required "additional proceedings (probably individualized for each plaintiff) . . . to establish damages." *In re: Sears*, 2016 WL 772785, at *9 (considering viability of affirmative defenses in granting claims-made settlement final approval). Indeed, "[p]redominance could fail where liability determinations are individual and fact-intensive, and also where affirmative defenses will require a person-by-person evaluation of conduct to determine whether a defense precludes individual recovery." *Gehrich*, 316 F.R.D. at 228. Plaintiffs also "would have to demonstrate the manageability of the case; a requirement absent in a class certified for settlement purposes only." *Schulte*, 805 F. Supp. 2d at 583.

The Settlement not only obviates these risks, it also provides Class Members with an immediate, certain and substantial recovery. "'[A] dollar today is worth a great deal more than a

dollar ten years from now,' and a major benefit of the settlement is that Class Members may obtain these benefits much more quickly than had the parties not settled." *Id.* (*quoting Reynolds*, 288 F.3d at 284).

In addition, this Settlement's terms compare favorably to two others courts recently approved in actions involving nearly identical products. The settlement in *In re Rust-Oleum Restore Mktg., Sales Practices and Prods. Liab. Litig.* ("*Rust-Oleum*"), No. 1:15-cv-01364 (N.D. Ill.), to which the Honorable Amy J. St. Eve granted final approval on March 6, 2017,[8] provides for a $9.3 million common fund—but *inclusive* of attorneys' fees.[9] The *Rust-Oleum* settlement also limits compensation for removing the product from, or repairing, decks to a maximum of $6 per square foot of the surface area on which the product *actually* failed.[10] The settlement in *Traxler, et al., v. PPG, et al.* ("*Traxler*"), No. 1:15-cv-00912 (N.D. Ohio),[11] which the court finally approved on August 23, 2017,[12] provides for a $6.5 million common fund inclusive of both settlement administration expenses and attorneys' fees,[13] and imposed compensation caps similar to the *Rust-Oleum* settlement.[14] Moreover, because those settlements provide for the

---

[8] *Rust-Oleum*, ECF 127.

[9] *See id.*, ECF 105 at Exhibit A, §§ 4.1, 4.6, 10.5.

[10] *Id.*, §§ 7.3-7.4.

[11] Katrina Carroll serves as Co-Lead counsel in *Rust-Oleum*, the first national class action brought against a deck resurfacing product manufacturer, and as plaintiffs' counsel in *Traxler*. Daniel Herrera's and Joseph G. Sauder's firms serve as Co-Lead counsel in *Traxler* and, together with Eric Gibbs, on plaintiffs' Executive Committee in *Rust-Oleum*. Herrera's and Sauder's firms also presently serve as Interim Co-Lead counsel in *Albright, et al. v. The Sherwin-Williams Company, et al.*, No. 17-cv-02513 (N.D. Ohio filed Nov. 30, 2017), an action arising from the defendant's allegedly fraudulent and deceptive marketing of two deck resurfacing products.

[12] *Traxler*, ECF 74.

[13] *See id.*, ECF 64-2, §§ 4.1, 4.7, 4.8.

[14] *See id.*, §§ 7.3-7.4.

creation of capped, common funds, they also require settlement administrators to reduce class member recoveries *pro rata* if approved claims exceeded the funds' net values.[15]

Here, by contrast, Class Members will recoup 75% of costs incurred in remediating their decks *in their entirety*, SA § IV(A)(2), and Behr has paid Notice and settlement administration expenses separately. Moreover, Plaintiffs here secured an uncapped settlement, and Class Members' approved claims will not be reduced due to an overall settlement cap. This Settlement thus offers comparable relief to the *Rust-Oleum* and *Traxler* settlements, both of which received final approval.

"In light of [Defendants'] potential defenses . . . legal uncertainty . . . and the time and expense inherent to litigation, proceeding to trial, and obtaining relief posed risks to Plaintiffs, and a possibility existed that they would have recovered nothing. Given this, the settlement provides fair actual cash value[,]" and should be approved accordingly. *Gehrich*, 316 F.R.D. at 229.

### B.    The Complexity, Expense and Likely Duration of the Litigation Supports Final Approval

Proceeding with litigation would require a substantial investment of time and expense and yield, at best, a marginal incremental benefit to the Class, supporting a finding that the proposed settlement is fair, reasonable, and adequate. *In re: Sears*, 2016 WL 772785, at *10.

The efficiency and financial relief the Settlement provides outweighs the complexity and expense of proceeding with litigation. As is true of most class action settlements, a failure to approve the Settlement "would likely require the parties to retain experts, analyze an enormous quantity of data, and engage in substantial motion practice, which could have resulted in reducing or negating, and certainly would have delayed, any judgment in favor of Plaintiffs, even

---

[15] *See id.*, § 7.8; *Rust-Oleum*, ECF 105 at Exhibit A, § 7.9.

putting aside the near certainty of appeal." *Gehrich*, 316 F.R.D. at 230. Conversely, the Settlement will yield a prompt, certain, and very substantial recovery for the Class while "avoid[ing] the inherent risk, complexity, time and cost associated with continued litigation." *Schulte*, 805 F. Supp. 2d at 587.

### C. Class Members' Overwhelmingly Positive Response to the Settlement Warrants Final Approval

#### 1. Objections and Opt-Outs Were *De Minimis*

Under the Court-approved Notice program, Class members had an opportunity to object to this Settlement or to opt out of the Class. *See generally* Fed. R. Civ. P. 23(c)(2)(B)(v), (e)(5). The deadline for objecting and opting out has now passed. Almost 28,000 Class members received direct Notice of the Settlement, and still others received notice through publications or online advertising. *See* Sec. II, *supra.* Yet only nine (9) people excluded themselves from the Class and only five (5) objected—but .05% of direct notice recipients. Herrera Decl., ¶ 18. Even those small totals are somewhat inflated, as 3 of the 5 objections (Beane, Lebrasseur, and Cull) have since been voluntarily withdrawn. *See* Herrera Decl., ¶ 20; ECF 108, 110; *see also generally* Fed. R. Civ. P. 23(e)(5) (objections may be withdrawn with the Court's approval).[16]

Where "so few class members have expressed opposition to the settlement," that fact weighs in further support of the reasonableness of the settlement and final approval. *Aranda v. Caribbean Cruise Line*, No. 12-cv-4069, 2017 WL 818854, at *4 (N.D. Ill. Mar. 2, 2017), *aff'd* at 896 F.3d 792 (7th Cir. 2018). As several courts in this district have recognized, when over 99.9% of the class has neither opted out nor objected, that rate of acceptance "is strong circumstantial evidence in favor of" the settlement. *In re Mexico Money Transfer Litig.*, 164 F.

---

[16] One of the two remaining objections (submitted by Aaron and Donna Carbon) was submitted several days after the deadline set in the Court's preliminary approval order. Herrera Decl., ¶ 21. Plaintiffs nevertheless respond to the substance of the objection below.

Supp. 2d 1002, 1021 (N.D. Ill. 2000); *In re Sw. Airlines Voucher Litig.*, No. 11-cv-8176, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013) (where less than 0.01% of the class opted out or objected, the class member response "support[ed] the reasonableness of the settlement"), *aff'd as modified*, 799 F.3d 701 (7th Cir. 2015).

### 2. The Settlement Fairly Compensates the Class

The objections submitted in this case reflect a relatively typical reaction—certain Class Members would like to receive more money under the Settlement than they are poised to receive. This reaction, though understandable, does not render the Settlement unfair or inadequate; courts recognize that "something could always be added to every class action settlement to make it more favorable to class members, but that is not the standard by which class action settlements should be measured." *In re: Sears*, 2016 WL 772785, at *11. Any objection that is "tantamount to complaining that the settlement should be 'better'… is not a valid objection." *Schulte*, 805 F. Supp. 2d at 595.

Nevertheless, with this type of objection it can be useful where possible to compare the instant settlement to others like it in the past. And as discussed above, the Settlement provides Class Members with compensation at least comparable to that afforded by similar past settlements—so while some Class Members may wish they were recovering still more, they can rest assured that the Settlement is treating them fairly.

In a similar vein, objections concerning the compensation certain Class Members stand to receive under the Settlement stem from unique circumstances that may have inflated their remediation costs relative to the Class at large. Objector Joy Thormodsgard, for example, spent $1,000 just to apply DeckOver (which is rare given that Behr marketed DeckOver as a "do it yourself" product, and most Settlement Class Members would not have paid out of pocket to have the product professionally applied). *See* ECF 103. Objector Thormodsgard also reports that

after paying to repair her deck, she contends she also needs to pay to replace it. *See id.* Likewise, two of the withdrawn objections were submitted by Class Members who stand to receive thousands of dollars, but contend they face even larger bills for deck replacement (something that is arguably a unique circumstance). *See* ECF 105 (Lebrasseur objection); 106 (Cull objection). As noted above, the Settlement contains a mechanism to protect Class Members who may face higher than normal costs. Under the Settlement's ADR provision, Class Members may elect (at no cost to themselves) to have their claims reviewed by the Honorable Wayne Andersen (Ret.), who will assess whether their compensation should be adjusted based on the documentation they provide. The ADR mechanism thus assuages the concerns of Class Members who may incur unusually high costs in remediating the damage they contend DeckOver caused.

Finally, one objection (by class members Aaron and Donna Carbon) states that while they would like to participate in the settlement, they cannot do so because they lack proof that they purchased DeckOver. *See* Herrera Decl., ¶ 21. This is the sole objection relating to the Settlement's proof requirement, likely because the Settlement requires relatively little evidence in order for Class Members to participate. They need not submit their DeckOver purchase receipts, for example, receipts many Class members likely failed to retain. They may instead submit any competent proof of their purchase, including a photograph of an opened DeckOver container. SA §§ IV(A)((1)-(2). While Plaintiffs sympathize with the Carbons for their apparent lack of evidence, the process here is "fair, particularly because an individual who is unable to establish that he or she is in the [class] would never be able to carry their burden of proof in a civil lawsuit." *Mangone v. First USA Bank*, 206 F.R.D. 222, 235 (S.D. Ill. 2001).

### D. The Opinion of Class Counsel Weighs in Favor of Approval

Class Counsel has extensive experience litigating consumer class actions and adamantly "believes the Settlement is beneficial to the Class and meets the class certification requirements

of Rule 23." *Schulte*, 805 F. Supp. 2d at 586; *see also* Herrera Decl., ¶ 22. Indeed, not only has Class Counsel spent *thousands* of hours becoming familiar with the strengths and weaknesses of Plaintiffs' claims, *see id.*, ¶¶ 3-6, they also base their opinion on their substantial experience successfully resolving class actions involving deck resurfacing products. *See id.*¶ 22; *Gehrich*, 316 F.R.D. at 230 ("Class Counsel are experienced TCPA litigators and strongly support the settlement."). "[T]he opinion of competent counsel in this case supports . . . approval of the Settlement." *Schulte*, 805 F. Supp. 2d at 587.

### E. The Stage of the Proceedings and the Amount of Discovery Completed at the Time of Settlement Supports Final Approval

Although Plaintiffs resolved this litigation at its early stages and with minimal motion practice, "[t]hat a case is settled early does not establish that the class was ill-represented or that the settlement was the product of collusion." *Schulte*, 805 F. Supp. 2d at 589. "Instead, the pertinent inquiry is what facts and information have been provided" prior to reaching a settlement. *Id.* at 587 (quotations omitted).

Critically, there is no question that, here, the Parties exchanged information sufficient for Plaintiffs to evaluate the strengths and weaknesses of their case and the sufficiency of Behr's settlement proposals. Prior to agreeing to mediate—let alone resolve their claims—the Parties exchanged their MIDP responses, ECF 39, 41, 42, and Plaintiffs reviewed nearly 5,000 documents produced by Behr and Home Depot. Herrera Decl., ¶ 4. Class Counsel also arranged for a consulting expert to inspect the properties of two Class members and evaluate the root cause underlying the DeckOver product's failure. *Id.*, ¶¶ 5-6. Behr also produced customer complaint, warranty and sales data Plaintiffs utilized to evaluate the sufficiency of any proposed settlement, *id.*, ¶ 4, data Behr supplemented informally as negotiations progressed. *Id.*, ¶ 9. Only then were Plaintiffs and Class Counsel able to negotiate and agree to this Settlement. *See id.*, ¶ 10.

"Although this settlement-directed discovery is not identical to the full merits discovery that would enable counsel to better evaluate the merits of plaintiffs' claims, extensive formal discovery would entail substantial cost and might not have placed the parties in a materially better position than they are now to determine an appropriate settlement value." *Gehrich*, 316 F.R.D. at 230 (quotations and citations omitted). Indeed, the fact that Class Counsel "negotiated a fair settlement is evidence that [they] had enough information to effectively represent the class." *Schulte*, 805 F. Supp. 2d at 588 (*citing Mars Steel Corp. v. Continental Ill. Nat. Bank and Trust Co. of Chicago*, 834 F.2d 677, 684 (7th Cir. 1987)).

## F.     There Is No Evidence of Fraud or Collusion

"There is also no evidence of collusion between class counsel and [Defendants], in which '[c]lass counsel and defendants ... generate a settlement that extinguishes the claims against the defendant and enriches class counsel and the class representatives with large awards, but does not provide commensurate or adequate benefit for the class.'" *Wright v. Nationstar Mortgage LLC*, No. 14 C 10457, 2016 WL 4505169, at *11 (N.D. Ill. Aug. 29, 2016) (*quoting Gehrich*, 316 F.R.D. at 230). Plaintiffs agreed to the Settlement only after carefully analyzing Behr's claims and sales data, and consulting with an expert witness in order to better understand the strengths and weaknesses of their claims and the damages Class Members likely suffered. *See* Herrera Decl., ¶¶ 4-6, 9. Moreover, the Settlement is "the result of arms-length negotiation reached after a mediation facilitated" by an experienced and well-regarded former federal judge. *Lucas v. Vee Pak, Inc.*, No. 12-CV-09672, 2017 WL 6733688, at *12 (N.D. Ill. Dec. 20, 2017) (approving settlement where there was "no evidence of collusion between plaintiffs' counsel and the defendant"); *see also Wright*, 2016 WL 4505169, at *11 (finding no evidence of collusion where parties participated in two prior mediations and engaged in discovery).

Defendants' agreement not to oppose Class Counsel's fee petition does not suggest otherwise. Settlement agreements that contain both "clear-sailing" and reverter provisions may raise the specter of collusion. *Gehrich*, 316 F.R.D. at 230-31. This is not a common fund settlement, however; a potential reversion is not at issue. Because "any reduction in attorney fees will go directly to the class . . . the risk of harm to the class from the clear-sailing clause is vanishingly minimal." *Id.* at 231. Accordingly, this factor also supports approval.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court grant Plaintiffs' Unopposed Motion for Final Approval.


Dated: November 20, 2018                    Respectfully submitted,

                                            /s/ *Daniel O. Herrera*

                                            Daniel O. Herrera
                                            Chris Tourek
                                            **CAFFERTY CLOBES MERIWETHER &
                                            SPRENGEL LLP**
                                            150 South Wacker Drive, Suite 3000
                                            Chicago, IL 60606
                                            Tel: (312) 782-4880
                                            Fax: (312) 782-4485
                                            dherrera@caffertyclobes.com
                                            ctourek@caffertyclobes.com

                                            Bryan L. Clobes
                                            **CAFFERTY CLOBES MERIWETHER &
                                            SPRENGEL LLP**
                                            1101 Market St., Suite 2650
                                            Philadelphia, PA 19107
                                            Tel: (215) 864-2800
                                            Fax: (215) 864-2810
                                            bclobes@caffertyclobes.com

Eric H. Gibbs
David Stein
Amanda M. Karl
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, CA 94612
Tel: (510) 350-9700
Fax: (510) 350-9701
ehg@classlawgroup.com
ds@classlawgroup.com
amk@classlawgroup.com

Katrina Carroll
Kyle A. Shamberg
**LITE DEPALMA GREENBERG LLC**
111 W. Washington Street, Suite 1240
Chicago, Illinois 60602
Tel. (312) 750-1265
kcarroll@litedepalma.com
kshamberg@litedepalma.com

Joseph G. Sauder
**SAUDER SCHELKOPF LLC**
555 Lancaster Avenue
Berwyn, PA 19312
Tel: (610) 200-0580
jgs@sstriallawyers.com

*Plaintiffs' Co-Lead Counsel*

Steven A. Schwartz
Benjamin F. Johns
Andrew W. Ferich
**CHIMICLES & TIKELLIS LLP**
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633
SAS@chimicles.com
BFJ@chimicles.com
AWF@chimicles.com

Jonathan Michaels
Kathryn Harvey
**MLG AUTOMOTIVE LAW, APLC**
2801 W. Coast Highway Suite 370
Newport Beach, CA 92663
Telephone: (949) 581-6900
Facsimile: (949) 581-6908
jmichaels@mlgautomotivelaw.com
kharvey@mlgautomotivelaw.com

Mark A. Ozzello
**THE OZZELLO PRACTICE PC**
17383 W Sunset Blvd, Ste A380
Pacific Palisades, CA 90272
Telephone:  (844) 774-2020
Facsimile:  (310) 454-5970
mark@ozzellolaw.com

John G. Emerson
**EMERSON SCOTT, LLP**
830 Apollo Lane
Houston, TX  77058
Telephone:  (281) 488-8854
Facsimile:  (281) 488-8867
jemerson@emersonfirm.com

Jonathan Shub
Kevin Laukaitis
**KOHN, SWIFT & GRAF, P.C.**
One South Broad Street
Suite 2100
Philadelphia, Pennsylvania 19107
Ph: (215) 238-1700
jshub@kohnswift.com
klaukaitis@kohnswift.com

Jeffrey B. Cereghino
Matt J. Malone
**ROCK LAW LLP**
101 Montgomery Street, Suite 1800
San Francisco, California 94111
Tel: (415) 433-4949
jbc@rocklawcal.com
mjm@rocklawcal.com

Stephen R. Basser
Samuel M. Ward
**BARRACK, RODOS & BACINE**
600 West Broadway, Suite 900
San Diego, CA  92101
Telephone:  (619) 230-0800
Facsimile:  (619) 230-1874
sbasser@barrack.com
sward@barrack.com

Michael F. Ram
Susan S. Brown
**ROBINS KAPLAN LLP**
2440 West El Camino Real
Mountain View CA 94040
Tel: (650) 784-4040
Fax: (650) 784-4041
mram@robinskaplan.com
sbrown@robinskaplan.com

Thomas Malone
**THE MALONE FIRM LLC**
1650 Arch Street
Philadelphia, PA 19103
Telephone: (215) 561-7700
Telephone: (215) 561-7700

Christopher D. Jennings
**JOHNSON FIRM**
2226  Cottondale Ln., Suite #210
Little Rock, AR 72202
Telephone: (501) 777-7777
Facsimile: (888) 505-0909
chris@yourattorney.com

*Additional Plaintiffs' Class Counsel*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing ***PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFICATION OF A SETTLEMENT CLASS, APPOINTMENT OF CLASS COUNSEL, AND RELATED RELIEF*** was electronically filed with the Clerk of the Court via the CM/ECF system, which served copies on all interested parties registered for electronic service on November 20, 2018.

/s/ Daniel O. Herrera
Daniel O. Herrera